Burks, J.,
delivered the opinion of the court.
The plaintiff in error, "William Payne, was indicted in the hustings court of the city of Richmond for a violation of the provisions of sections 12 and 13, chapter 194, Code of 1873, concerning lotteries.
The indictment contains three counts. The first count charges that the said Payne “ unlawfully did set up and promote, and was concerned in managing and ■ drawing a certain lottery for the division of money and other things of value by chance and lot.” The *856 second count charges that he “ unlawfully did offer for saH an<^ unlawfully did sell, a lottery ticket for the of money and other things of value by chance and lot;” and the third count charges that he “ unlawfu]jy clid, knowingly, permit in a certain house, then and there under his control, a certain lottery for the division of money and other things of value by chance and lot.”
There was a demurrer to the indictment and each count, which was overruled, and the defendant thereupon pleaded not guilty; and on the trial of the issue joined in said plea, the jury rendered a verdict by which they found the defendant guilty, and assessed his fine at twenty-five dollars.
The court entered up judgment against the defendant for the fine and costs of the prosecution, and that he be confined in jail for the term of three months, and thereafter till the said fine and costs be paid, or he be otherwise discharged by due course of law, such additional confinement not to exceed six months.
To this judgment a writ of error was awarded by one of the judges of this court.
In the course of the trial the plaintiff in error took three exceptions to rulings of the court, set out in bills, which also contain the evidence given to the jury.
Daniel "Wren, a policeman, was called as a witness on behalf of the Commonwealth, and testified that he arrested Payne, the plaintiff in error, in a house occupied by him in the city of Richmond, on Franklin street, near Sixteenth; that when arrested Payne was seated at a table in a side room, with the “ paraphernalia,” as the witness styled it, on the table before him, which the witness thought was that of “ policy,” and which was identified by him and exhibited, and by him explained, as far as he had knowledge, to the jury; that he found in the room a colored woman *857 (Polly Manson), whom he also arrested ; and that she said she came to the house to bring a note for Payne.
After this evidence had been given, the said Polly Manson was sworn as a witness on behalf of the Commonwealth, and stated, in substance, that one John Cameron had given her a note and ten cents and told her to carry them to Payne; that she went to Payne’s house to deliver them at the time she was arrested; that she did not deliver either to Payne; that at the time of her arrest she had not spoken to him; that she dropped the note in the room, or in the house, or in the street, though she seemed to think that it was dropped in the room, as it was in her lap, she said, when she sat down; that for aught she knew Payne never heard of the note.
Thereupon, the said John Cameron, who had been sworn as a witness on behalf of the Commonwealth, and whose examination had 'been suspended until Polly Manson had testified, was recalled, and was asked by the attorney for the Commonwealth to “tell the jury what that note was about”; and against the objection of the plaintiff in error the witness was permitted to make his statement to the jury; to which action of the court the plaintiff in error excepted. The statement is set out in the second hill of exceptions, and, as it is short, it is here given in the language of the witness:
“ I was going to Main street for a watch. At the corner of Jail alley I picked up a piece of paper with four numbers on it. I took out my blank-book and wrote the four numbers on a leaf of it. Tore out the piece with numbers on it. As I was going across Broad street I met aunt Polly Manson and told her to give the note to Mr. Payne, and I gave her ten cents to give also. The paper was folded. It was Monday *858 morning. I believe four numbers were on it. Don’t remember numbers. I did not know where Mr. Payne .'lived. Last time I saw him was two years ago. He used to play for the Southern Association. ■ His office wás then on Franklin street, near Governor street. I have never been down to his place. I did not know Mr. Payne’s business when I sent the note. I didn’t mention policy nor nuthin to her. I told her to give the note and money to Mr. Payne. Don’t know whether he got it or not. Hever heard of Payne’s playing since the Southern Association was broken up,”
The court is of opinion that the hustings court erred in not excluding this statement from the jury. Ho proper foundation was laid for its introduction as evidence. The circumstances proved do not sufficiently connect the plaintiff in error with the writing or paper with figures on it called a “ note ” to render it admissible as evidence in this prosecution. It never reached him. There is no proof that he ever read it, or saw it, or heard of it, or knew of its existence. If it was dropped in his house by the messenger who bore it, at the time of the arrest, as stated by the witness, there is no probability that it ever came to his possession.
It does not appear that there were any words written upon it but only “ four numbers ” copied by Cameron from a paper picked up on the street. What else, if anything, besides the “four numbers,” was written on the last-named paper, does not appear. Whether it was at the place where it ivas found by accident or by contrivance, the record does not enable us to say. It may be that the numbers on the paper designated corresponding numbers of a lottery ticket, and that this method was adopted to advertise and give information, without being detected, to those who might desire to purchase. This may be so, and *859 yet the evidence does not show that the plaintiff in error had any agency in the matter; for Cameron says he did not know Payne’s business when he the note. ■
Everything that passed between the witnesses, Manson and Cameron, touching the note and money, were, as to Payne, res inter alias acta. If the original note had been produced on the trial it could not have been used as evidence, and, by consequence, secondary evidence of the contents was illegal.
A letter addressed to a party cannot be admitted as proof against him unless it be proved that he received and acted on it. Smiths v. Shoemaker, 17 Wall. U. S. R. 630.
A written communication not received by the person for whom it is intended stands on no higher ground as evidence than a verbal declaration made not in the presence of one who is sought to be affected by it. They cannot be treated as admissions in either case. Both are hearsay.
We cannot say what effect this illegal evidence may have had on the minds of the jury. It was very well calculated to influence them. In such case the rule of this court is, that the judgment must be reversed.
It was observed by Pendleton (president) in Lee v. Tapscott, 2 Wash. 276, 281, that illegal or improper evidence, however unimportant it may be to the cause, ought never to be confided to the jury; for if it should have an influence upon their minds, it will mislead them; and if it should have none, it is useless, and may at least produce perplexity. See also Brown & Boisseau v. May, 1 Munf. 288, 291.
The law on this subject has been recently expounded by this court. In Southern Mut. Ins. Co. v. Trear, 29 Gratt. 255, 259, the president, delivering the opinion of the court, speaking of the admission of irrelevant evi *860 dence in the case, said: “If the only objection to the evidence was its irrelevancy, and it could not possibly prejudiced the defendants, then the judgment ought not to be reversed for the error in not excluding it; for to authorize the reversal of a judgment for error in admitting irrelevant evidence not only must the evidence be irrelevant, but it must- be of such, a nature' as that its admission may have prejudiced the adverse party. If he may have been so prejudiced, even though it be doubtful ivhether in fact he toas so or not, that is a sufficient ground for reversing the judgment.” See also Poindexter, &c., v. Davis & als., 6 Gratt. 481, 493; Preston v. Harvey, 2 Hen. & Mun. 55, 67. A like rule is applied in determining whether a judgment should be reversed for an erroneous instruction given. Danville Bank v. Waddill, 27 Gratt. 448.
■ Ho error is disclosed by the first bill of exceptions, and none was assigned.
We are saved the necessity of considering the question raised by the third bill of exceptions, taken to the action of the court refusing to set aside the verdict of the jury and grant the plaintiff in error a Dew trial, based on the ground that the verdict was1 contrary to the law and the evidence, as for the error already stated the judgment must be reversed and a new trial granted.
The judgment was as follows:
This day came again as well the,attorney-general on behalf of the Commonwealth as the plaintiff in error by his counsel, and the court having maturely considered the transcript of the record of the judgment aforesaid and the ai’guments of counsel, is of opinion, for reasons stated in writing and filed with the record, that the said hustings court of the city of Richmond erred in not excluding from the jury as evidence on the trial of the *861 issue joined in this cause, the statement made by the witness, John Cameron, set out in the second bill of exceptions in the record, in response to the question of the attorney for the Commonwealth also set out in said bill; it is therefore considered and ordered that for the error aforesaid, the said judgment be reversed and annulled, the verdict of the jury, on which said judgment was rendered be set aside, and this cause be remanded to the said hustings court for a new trial of the issue joined, and for further proceedings in conformity to the opinion hereinbefore expressed; which is ordered to be certified to the said hustings court of the city of Eichmond.
Judgment reversed.